IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BARRY WAYNE MARCUS,            )
                               )
            Petitioner         )
                               )
                               )
      v.                       )      1:06CV1029
                               )
SIDNEY HARKLEROAD, Admin.,     )
Marion Correctional Institute, )
                               )
            Respondent.        )

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on a motion for summary judgment (docket no. 5) by Respondent on this petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 by state court prisoner Barry Wayne Marcus, who was found guilty of first-degree felony murder, felonious larceny, and felonious breaking and entering. Petitioner asserts that he is entitled to a writ of habeas corpus on the ground that the imposition of a life sentence without parole in a murder case, where the jury acquitted the defendant of the premeditation and deliberation prong, constitutes cruel and unusual punishment. Petitioner has responded in opposition to Respondent's motion for summary judgment by filing his own motion for summary judgment (docket no. 7) and, in this posture, the matter is ripe for disposition. Moreover, the parties have not consented to the jurisdiction of the magistrate judge. The motions must therefore be dealt with by way of recommendation. For the reasons stated herein, it will be recommended that the court grant Respondent's motion for summary judgment and dismiss the petition.

## I. BACKGROUND

The facts underlying Petitioner's conviction, as summarized by the North Carolina Court of Appeals on direct appeal, *State v. Marcus*, No. COA04-771, 2005 WL 465595 (N.C. Ct. App. Mar. 1, 2005) (unpublished), are as follows:

> The State's evidence at trial tends to show the following:
>
> On 22 January 2001, defendant shot his grandfather, Lester Maness ("Maness"), five times as Maness arrived home from the small country store that he owned and operated. Maness had in his possession at the time of the shooting a bag of money which constituted proceeds from the store. Defendant first approached Maness and asked for money. When Maness refused to give defendant money, defendant shot Maness, took the bag of money and fled.
>
> Upon being called to the scene of the shooting, Loria Marcus ("Loria"), who is defendant's mother and Maness's daughter, was instructed by the investigating police officer to find defendant and bring him to the scene of the shooting. Loria found defendant and brought him to the scene, at which time defendant began crying and was taken to the Moore County Sheriff's Office. During the police investigation of the shooting, a canine unit tracked the money bag to a nearby church. The police also searched defendant's residence with the permission of defendant's father, and found money and a toboggan inside a doghouse on the premises.
>
> The following day, defendant requested a meeting with the investigating detective. At the meeting, defendant signed a waiver of his *Miranda* rights and gave the detective a statement in which he admitted shooting his grandfather at least four times because his grandfather would not give him any money. Defendant stated that he wanted the money to buy crack cocaine.

> Defendant was indicted on charges of first-degree murder, robbery with a dangerous weapon, breaking and/or entering, and larceny. Defendant was tried before a jury and convicted of first degree murder, felony larceny, and breaking and/or entering. Defendant was sentenced to life imprisonment without parole.

*Id,* at *1. As pointed out by Petitioner, the verdict form in state court shows that the jury found him guilty of first-degree murder under the felony murder rule. The jury specifically did not find Petitioner guilty of premeditation and deliberation. (Pet'r. Supp. Br., Ex. A).

On direct appeal, Petitioner raised four claims, including the two claims he presents to this court. These four claims were rejected on their merits by the North Carolina Court of Appeals. Petitioner then filed a petition for discretionary review with the North Carolina Supreme Court, asserting claims based on the assignments of error briefed before the court of appeals. The North Carolina Supreme Court summarily denied the petition for review on June 30, 2005. 617 S.E.2d 285 (N.C. 2005). Petitioner's petition for writ of certiorari in the United States Supreme Court was denied on November 28, 2005. 126 S. Ct. 758 (2005).

Petitioner filed a petition for writ of habeas corpus with this court on November 27, 2006. On December 11, 2006, Respondent (the State) filed an answer and a motion for summary judgment with a supporting brief. On December 18, 2006, Petitioner filed a response to the motion for summary judgment and a cross-motion for summary judgment. The matter is ripe for disposition.

Petitioner presents two claims in his Petition for Writ of Habeas Corpus:

**GROUND ONE:**

The Defendant's right to Due Process was violated when the prosecutor implied to the jury that Defendant was already being given a break because the State would not seek the death penalty.

Supporting facts: During jury voir dire, the prosecutor stated that he had "good news" for the jury that the case was not a death penalty case. The State did not seek death but instead asked for life without parole. The defendant contends that this prejudiced the case and implied to the jury that he had already been given a break from the possible sentence of death.

**GROUND TWO:**

The imposition of a life sentence without parole in a murder case, where the jury acquitted the Defendant of premeditation and deliberation prong, constituted cruel and unusual punishment.

Supporting facts: The jury was instructed on [pre]meditated and deliberated murder and on felony murder. The jury found the Defendant was guilty of felony murder and the judge imposed a sentence of life imprisonment without parole. The Defendant argued that the sentence imposed was grossly disproportionate to the crime committed, in violation of the Eighth Amendment. The North Carolina Court of Appeals addressed the issue and stated that federal law only prohibits "modes" of punishment[,] not long terms of imprisonment.

In his supporting brief, Petitioner states that he does not object to the granting of summary judgment to the State on his first claim (Pet'r. Supp. Brief at 2). That claim, therefore, is deemed abandoned and this court will address only Petitioner's second habeas claim.

4

## II. STANDARD OF REVIEW

As noted, this matter is before the court on summary judgment. In a habeas case, "not . . . every set of allegations not on its face without merit entitles a . . . petitioner to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment." *Blackledge v. Allison*, 431 U.S. 63, 80 (1977). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.* 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence, or by demonstrating that the non-moving party's evidence is insufficient to establish his

claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

It is too glib, however, simply to say that the standard formulation for assessing summary judgment in the run-of-the-mill civil case applies in all habeas cases. For example, no habeas application by a state court prisoner may be "granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As another example, in a habeas claim of ineffective assistance of counsel, a federal court "must indulge a strong presumption that counsel's conduct was reasonable, and . . . the petitioner must overcome the presumption that the challenged conduct may have been sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Nevertheless, the point is that habeas cases are subject to a summary judgment analysis as are all civil cases. *See* Rule 11, Rules Governing Section 2254 Cases In The United States District Courts; *see also Maynard v. Dixon*, 943

F.2d 407, 412-13 (4th Cir. 1991)(FED. R. CIV. P. 56 applies to habeas proceedings); *but cf.*, 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4268, p. 485 (2d ed. 1988)("The procedure of applications for habeas corpus for state prisoners is a confusing amalgam, to be found in a variety of different sources. There are a number of procedural provisions in the habeas corpus statutes themselves.").

In this "merits review" pursuant to 28 U.S.C. § 2254(b)(2), the court must conduct an "independent examination of the record and the clearly established Supreme Court law." *Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (en banc). This court notes that this review is confined to whether the "result" of the state court's decision is contrary to or an unreasonable application of clearly established Supreme Court law or based upon an unreasonable determination of facts. *Id.* at 163 (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases--indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the *result* of the state-court decision contradicts them.")(first emphasis in original, second emphasis added).

## III. ANALYSIS

Felony murder, a murder committed in the perpetration of a felony committed with a deadly weapon, constitutes first-degree murder in North Carolina. N.C. GEN. STAT. § 14-17. Under North Carolina law, the sentence mandated for a conviction

-7-

of first-degree murder is either death or life imprisonment without parole. *Id*. Petitioner contends that his sentence of life imprisonment without parole constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution.[1] The Eighth Amendment prohibits the imposition of a sentence that is grossly disproportionate to the severity of the crime. *Ewing v. California*, 538 U.S. 11, 21 (2003). In *Ewing*, the Court stated that beyond a capital sentence, successful challenges on the proportionality principle are extremely rare. *See id.* One example of a successful challenge given by the Court was if the legislature made overtime parking a felony punishable by life imprisonment. *See id.*; *see also Rummel v. Estelle*, 445 U.S. 263, 266 (1980) (where the Supreme Court held that the mandatory life sentence imposed upon defendant for his third felony, "obtaining $120.75 by false pretenses," did not violate the Eighth Amendment). In *Hutto v. Davis*, 454 U.S. 370 (1982), the Supreme Court reviewed its decision in *Rummel* and determined that "*Rummel* stands for the proposition that federal courts should be 'reluctant to review legislatively mandated terms of imprisonment.'" *Id*. at 374 (quoting *Rummel*, 445 U.S at 272, 274). The *Ewing* Court similarly stated that it would defer to legislative policy in making sentencing decisions. *See Ewing*, 538 U.S. at 25.

---

[1] The Eighth Amendment of the United States Constitution, applicable to the individual states through the Fourteenth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

In *Enmund v. Florida*, 458 U.S. 782 (1982), the United States Supreme Court held that the Eighth Amendment forbids the imposition of the death penalty on a defendant who aids and abets in the commission of a felony in the course of which a murder is committed by others, when the defendant does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. *Id.* at 801. The *Enmund* holding was later qualified by the Supreme Court in *Tison v. Arizona*, 481 U.S. 137, 158 (1987), where the Court held that the Eighth Amendment does not prohibit the execution of one convicted of felony murder who was a "major participant in the felony committed" and whose mental state was one of "reckless indifference."

Petitioner's case is hardly one of overtime parking or one where he was not a "major participant" in the felony. Unlike most of the proportionality cases previously decided, this case is not one in which the sentence and the underlying crime are "vastly at odds." *See Kimmons v. McDonough,* No. 3:04cv166/MCR/MD, 2006 WL 2583702, at *13 (N.D. Fla. Sept. 5, 2006). A jury in this case convicted Petitioner of the murder of his grandfather and determined that the murder was committed in the course of a felony. Petitioner was the only participant in the crime. The North Carolina legislature has found it appropriate to punish such offenses with life imprisonment without parole, a legislative policy determination which federal courts should review only in rare circumstances. *See, e.g., Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (stating that appellate courts "should grant substantial deference

to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crime, as well as to the discretion that trial courts possess in sentencing convicted criminals").

Petitioner contends that the North Carolina Court of Appeals did not apply the proper test in analyzing his Eighth Amendment claim. Petitioner argues that the North Carolina Court of Appeals improperly applied federal law in stating that "when a punishment does not exceed the limits fixed by statute, the punishment cannot be classified as cruel and unusual in a constitutional sense." A complete reading of the opinion by the North Carolina Court of Appeals reveals, however, that the language cited by Petitioner was actually a quote from other cases: "'North Carolina courts have consistently held that when a punishment does not exceed the limits fixed by statute, the punishment cannot be classified as cruel and unusual in a constitutional sense.'" *Marcus*, 2005 WL 465595, at *3 (citing *State v. Stinnett*, 129 N.C. App. 192, 200, 497 S.E.2d 696, 701 (1998) (citations omitted)). Moreover, in *Marcus*, the North Carolina Court of Appeals went on to discuss federal case law, including *Ewing* and *Harmelin v. Michigan*, 501 U.S. 957 (1991), before finding that the mandatory life sentence for felony murder is simply a legislative decision designed to promote public safety by incapacitating violent criminals and that "[n]othing in the Eighth Amendment prohibits our state from making that choice." 2005 WL 465595, at *4.

Petitioner also argues that the state court should have engaged in the three-step proportionality analysis discussed by Justice Kennedy in his concurring opinion in *Harmelin*. 501 U.S. at 1006. In *Harmelin*, Justice Scalia, writing for a majority of the Court, rejected the argument that severe mandatory penalties were cruel and unusual in violation of the Eighth Amendment. Justice Kennedy, in his concurring opinion in *Harmelin*, suggested that the following principles inform the proportionality analysis: "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors." *Id.* at 1001. Be that as it may, Justice Kennedy further suggested that these principles guide the final principle that the "Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (citing *Solem*, 463 U.S. at 288, 303; *Weems v. United States*, 217 U.S.349, 371 (1910); *Coker v. Georgia*, 433 U.S. 584, 592 (1977); and *Rummel*, 445 U.S. at 271).

Petitioner argues that the threshold question is whether there is an inference of gross (as opposed to actual) disproportionality between the underlying crime and the sentence imposed. The Court in *Ewing*, however, does not adopt such a test. Furthermore, Petitioner refers in his brief to the next two steps in the analysis purportedly required by the Supreme Court: An intrajurisdictional comparison and

-11-

an interjurisdictional comparison. The Supreme Court, however, requires no such comparison. *See Ewing*, 538 U.S. at 23-24 (noting Justice Kennedy's concurrence in *Harmelin* stating that precedent "did not mandate" comparative analysis "within and between jurisdictions," and that Justice Kennedy's concurrence is used as a guide in applying the Eighth Amendment gross disproportionality review). Moreover, this court concludes that even if it were to conduct the threshold comparison urged by Petitioner, he has failed to show a gross imbalance between the crime and the sentence imposed. Petitioner's crime was hardly as benign as he would have this court believe, and it was at least as serious as those reviewed in *Andrade*, *Rummel*, *Hutto* and *Ewing*, where proportionality challenges were rejected by the Supreme Court.

As the Supreme Court held in *Edmund*, federal proportionality principles properly focus on a defendant's personal culpability. 458 U.S. at 786. Petitioner in this case cannot escape his individual culpability for the murder of his grandfather. The imposition of a life sentence, without possibility of parole, in this case, does not violate the Eighth Amendment prohibition against cruel and unusual punishment. The state court holding did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law.

## IV. CONCLUSION

For all these reasons, **IT IS RECOMMENDED** that Respondent's motion for summary judgment (docket no. 5) be **GRANTED**, that Petitioner's motion for summary judgment (docket no. 7) be **DENIED**, and that the petition be dismissed.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

Durham, North Carolina
February 7, 2007